UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TRACEY BELLIZANE | CIVIL ACTION NO. 6:16-CV-01508 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| J C PENNEY CORP., INC., ET AL | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Before the Court is the motion for summary judgment (Rec. Doc. 71), which was filed by the plaintiff, Tracey Bellizane.[1] The defendant, J.C. Penney, Corp., Inc. ("J.C. Penney") opposes the motion (Rec. Doc. 76). Oral argument was held on June 28, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## BACKGROUND

This case arises out of personal injuries allegedly sustained by the plaintiff, Tracey Bellizane, when her left elbow was struck by a malfunctioning door, as she entered a J.C. Penney store, in Lafayette, Louisiana, on October 30, 2015.[2] The entrance at issue consists of glass double doors and is mainly used as the employee

---

[1] The record is inconsistent as to the spelling of the plaintiff's first name being Tracey or Tracy, the latter being the spelling employed in the instant motion. Because the original petition for damages (Rec. Doc. 1-3) as well as the caption in the Court's docket employ the former spelling, the plaintiff is referred to herein as Tracey Bellizane.

[2] Rec. Doc. 71-2.

entrance; however, it also serves as a point of entry for salon customers, online order pick-ups, and the general public.[3] Before leaving the shopping mall on October 30, 2015, the plaintiff filed an incident report with J.C. Penney.[4] The incident was also captured on the store's video surveillance system.[5]

Prior to this incident, J.C. Penney employees were generally aware that the door was not functioning properly.[6] However, at the time of their depositions, neither J.C. Penney's general manager, Randall Spears, nor Human Resources manager, Larry Ordoyn, was aware of any other accidents reported in connection with this door either before or after October 30, 2015.[7] Although J.C. Penney did not have a standard policy of inspecting the store's doors, Mr. Spears testified that it was J.C. Penney's practice to submit work orders as maintenance problems would arise.[8]

On October 21, 2015, prior to the plaintiff's incident, a work order was submitted for the door at issue, which indicated: "[D]oor closer at employee entrance is bad causing door to slam."[9] J.C. Penney submitted the work order to CBRE, which is a company contracted by J.C. Penney to handle maintenance and repair issues.[10]

---

[3] Rec. Doc. 76-4, pp. 7, 9-10.
[4] Rec. Doc. 76-8.
[5] *See* Rec. Doc. 76-7.
[6] Rec. Docs. 76-4, pp. 13-14; 76-6, p. 36.
[7] Rec. Doc. 76-6, p. 14; 76-4, pp. 12-13.
[8] *Id.* at p. 21.
[9] Rec. Doc. 76-5, p. 1.
[10] Rec. Docs. 76-6, pp. 8-9, 11-12; 76-5, p. 1.

On behalf of J.C. Penney, CBRE then hired All American Doors & Docks to make the necessary repairs.[11] The work order indicates that the door was inspected on November 10, 2015, but not repaired until early December 2015, when a technician "installed [a] new closer on [the] door."[12]

CBRE was responsible for conducting inspections of the store, including all interior and exterior doors. The inspection checklists completed by CBRE in May and November of 2015 indicate that all doors were checked, and there are no "exceptions" or "notes" indicated, aside from needing to replace exit signs during the November inspection.[13] It is undisputed that the door at issue was, at all pertinent times, solely within the custody and control of J.C. Penney.[14]

In support of the instant motion, the plaintiff has attached an affidavit of Michael Panish, the plaintiff's retained expert in "door and door hardware installation, repairs and service." Relying solely on Mr. Panish's opinion that J.C. Penney is legally at fault and liable for the plaintiff's injury-causing incident, the plaintiff seeks summary judgment pursuant to Louisiana Civil Code article 2317.1.[15]

---

[11] Rec. Doc. 76-5.
[12] Rec. Docs. 76-5, pp. 2, 5; 76-6, p. 16.
[13] Rec. Doc. 76-10.
[14] Rec. Docs. 71-2; 78-1.
[15] For purposes of this ruling, the Court need not address the defendant's arguments that portions of Mr. Panish's report and resultant opinions may be inadmissible. *See* Rec. Doc. 76, pp. 12-14, and 12 n. 4. The defendant's separate motion to exclude Mr. Panish's legal opinions at trial (Rec. Doc. 79) will be addressed in due course.

J.C. Penney has responded by arguing that there are genuine issues of material fact as to the existence of an unreasonable risk of harm, the reasonableness and timing of the defendant's efforts to correct any defects in the door, and causation of the plaintiff's injuries, which should preclude summary judgment in this case.

## ANALYSIS

### A. THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[16] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[17]

The party seeking summary judgment has the initial responsibility of informing the Court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[18] If the

---

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[17] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.

[18] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[19] All facts and inferences are construed in the light most favorable to the nonmoving party.[20]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[21] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[22]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[23] The Court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[24] "When all of the summary judgment evidence presented by

---

[19] *Washburn*, 504 F.3d at 508.
[20] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).
[21] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 325).
[22] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).
[23] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).
[24] *Id.*

both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[25]

B.   THE APPLICABLE LAW

Because this is a diversity action, Louisiana substantive law applies.[26] As stated, the plaintiff seeks summary judgment pursuant to Louisiana Civil Code article 2317.1, which provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the Court from the application of the doctrine of res ipsa loquitur in an appropriate case.[27]

"To prevail on such a claim, an injured plaintiff must prove that (1) the object was in the defendant's custody; (2) the thing contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the damage; and (4) the defendant knew or should have known of the defect."[28] The

---

[25] *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[26] *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).
[27] La. Civ. Code art. 2317.1.
[28] *Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 627–28 (5th Cir. 2005).

"plaintiff bears the burden of proving all these inquiries in the affirmative and failure on any one is fatal to the case."[29]

## C. GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

As stated, it is undisputed that the relevant door was at all pertinent times solely within the custody and control of J.C. Penney. Having satisfied the first element of her claim, the plaintiff then relies solely on the opinion of her door expert, Michael Panish, to urge the Court to find that the door was defective; the defect presented an unreasonable risk of harm; the defendant knew of the defect and failed to take reasonable corrective measures; and the plaintiff's injuries were caused by the defective door. It is clear from the record that the door contained a defect and that the defendant was aware of the defect prior to the relevant incident. However, construing all facts and inferences in favor of the nonmovant, there remain genuine issues of material fact as to the existence of an unreasonable risk of harm, the reasonableness and timing of the defendant's efforts to correct the defect, and causation.

"The owner of a premise cannot be held responsible for all injuries resulting from any risk posed by its property, only those presenting an unreasonable risk of

---

[29] *Netecke v. State ex rel. DOTD*, 98-1182 (La. 10/19/99), 747 So. 2d 489, 494.

harm to others."[30] Furthermore, "[t]hat an accident occurred as a result of a defect does not elevate the condition of the thing to an unreasonably dangerous defect."[31] To determine whether an alleged defect presents an unreasonable risk of harm, Louisiana courts consider four factors: 1) the utility of the object or complained-of condition; 2) the likelihood and magnitude of harm, including the obviousness of the risk; 3) the cost of preventing the harm; and 4) the nature of the plaintiff's activities.[32] The Louisiana Supreme Court has "described the question of whether a defect presents an unreasonable risk of harm as 'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.'"[33]

The plaintiff's expert opines, in part, that the October 21, 2015, work order, indicating that the "door closer at employee entrance is bad, causing door to slam," made J.C. Penney "aware that the subject door was unsafe and dangerous."[34] Based on that awareness, the plaintiff's expert opines that the door should have been taken out of service immediately.[35] In response, J.C. Penney argues that the fact that a defect existed, causing the door closer not to function properly, does not necessarily

---

[30] *Johnson v. City of Monroe*, 38,388 (La. App. 2 Cir. 4/7/04); 870 So. 2d 1105, 1110.
[31] *Todd v. Angel*, 48,687 (La. App. 2 Cir. 1/15/14); 132 So. 3d 453, 459.
[32] *Conner v. Kraemer-Shows Oilfield Servs., LLC*, 33 F. Supp. 3d 725, 728-29 (W.D. La. 2014) (citing *Broussard v. State ex rel. Office of State Bldgs.*, 113 So.3d 175, 184 (La. 2013)).
[33] *Broussard*, 113 So.3d at 183 (quoting *Reed v. Wal–Mart Stores, Inc.*, 97–1174, p. 4 (La. 3/4/98); 708 So.2d 362, 364 (quoting *Tillman v. Johnson*, 612 So.2d 70 (La. 1993) (per curiam))).
[34] Rec. Doc. 71-3, p. 1, ¶ 4.
[35] *Id.*

render the door unreasonably dangerous. "[N]ot every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances."[36] Furthermore, the defendant points to the lack of accidents both before and after the plaintiff's incident as evidence that the defect itself did not render the door unreasonably dangerous. Indeed, Louisiana courts recognize that "[t]he absence of prior complaints or incidents is a valid consideration in assessing whether a given condition poses an unreasonable risk of harm."[37] Simply put, a finding of an unreasonable risk of harm is "a matter wed to the facts" and "context-specific," to be determined by the factfinder in each particular case.[38]

As relevant to the above-cited risk-utility analysis, the defendant also points to applicable provisions of the fire code and safety ordinances, which require that all doors of egress, like the one at issue here, remain unlocked during business hours.[39] Consistent with those requirements, J.C. Penney's general manager, Mr. Spears, testified that "[a]ll the doors are supposed to be unlocked during business hours

---

[36] *Netecke*, 747 So. 2d at 495.

[37] *Nugent v. Car Town of Monroe, Inc.*, 50,910 (La. App. 2 Cir. 9/28/16); 206 So. 3d 369, 375 (citing *Chambers v. Village of Moreauville*, 2011–898 (La. 1/24/12); 85 So.3d 593; and *Waddles v. Brookshire Grocery Co.*, 50,150 (La. App. 2 Cir. 9/30/15); 181 So.3d 772).

[38] *Broussard*, 113 So.3d at 183-84; *Celestine v. Union Oil Co.*, 94–1868 (La. 4/10/95); 652 So.2d 1299.

[39] Rec. Doc. 76, pp. 9-10.

because of fire regulations."[40] Because of that, Mr. Spears further asserted that the store would have kept a "broken and defective" door unlocked if management "felt that there was no harm to anyone[.]"[41] Such evidence must be weighed by the factfinder at trial.

Moreover, the defendant has argued that, based upon the surveillance video which captured the incident, the plaintiff appears to have made minimal contact with the door, calling into question whether this incident caused the plaintiff's injuries. In connection with his examination of the plaintiff, J.C. Penney's IME expert, Dr. Patrick Juneau, viewed the video and noted that the plaintiff's contact with the door "did not cause her to fall in any way."[42] Courts are entitled to "assign great[] weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[43] The Court's review of the video surveillance further supports the finding that there are genuine issues of material fact which preclude summary judgment.

In sum, the defendant has established genuine issues of material fact as to the existence of an unreasonable risk of harm, the reasonableness of corrective measures

---

[40] Rec. Doc. 76-6, p. 23.
[41] *Id.*
[42] Rec. Doc. 76-9, p. 3.
[43] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

undertaken by the defendant, and causation. "Because the determination of whether a defective thing presents an unreasonable risk of harm 'encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard,'" the plaintiff's motion for summary judgment is denied.[44]

## CONCLUSION

For the reasons fully explained herein, the motion for summary judgment (Rec. Doc. 71), filed by the plaintiff Tracey Bellizane, is hereby DENIED.

Signed at Lafayette, Louisiana on this 2nd day of July 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[44] *Broussard*, 113 So. 3d at 185–86.